Robert STEVENS, d/b/a Fish Heads
Bar & Grill, Appellant,

v.

STATE of Alaska, ALCOHOLIC BEVER-
AGE CONTROL BOARD and Matanus-
ka–Susitna Borough, Appellees.

No. S–13436.

Supreme Court of Alaska.

Aug. 12, 2011.

Christine S. Schleuss, Law Office of Christine Schleuss, Anchorage, for Appellant.

John J. Novak, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellee State of Alaska.

John Aschenbrenner, Deputy Borough Attorney, Lisa Thomas, Assistant Borough Attorney, and Nicholas Spiropoulos, Borough Attorney, Palmer, for Appellee Matanuska–Susitna Borough.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

A bar owner was charged with and convicted of violating borough noise and adult entertainment ordinances. The borough later protested continued operation under the bar owner's liquor license to the Alcoholic Beverage Control Board (ABC Board). The ABC Board sustained the protest and denied the bar owner's continued operation under his liquor license. The bar owner requested an adjudicatory hearing before an administrative law judge to review the ABC Board's decision. The administrative law judge recommended the ABC Board uphold its initial decision and enforce the denial of continued operation under the license. The ABC Board adopted the recommendation. The bar owner appealed to the superior court, which affirmed the ABC Board's decision. The bar owner appeals, and we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Robert Stevens owned and operated Fish Heads Bar & Grill (Fish Heads) in the Matanuska–Susitna Borough and held a biennial liquor license. Because Fish Heads operated outside designated commercial use areas in the Matanuska–Susitna Borough, Borough Code required Stevens to obtain a conditional use permit.[1]

Fish Heads drew excessive-noise complaints from neighbors. The Borough hired an acoustics expert to determine whether Fish Heads complied with applicable Borough noise ordinances; it did. The Borough then enacted a new noise ordinance prohibiting both: (1) emitting noise "plainly audible outside the real boundary of the property" during certain hours and (2) operating sound-amplifying devices that "create[ ] vibration which is above the vibration perception threshold of an individual at or beyond the real property boundary of the source of the vibration."[2]

The Borough cited Stevens twice in May 2004 for violating this new ordinance and he was convicted of both violations. Stevens unsuccessfully appealed these convictions to the court of appeals.[3] Stevens also staged adult dance performances in November 2004; the Borough cited Stevens for violating an ordinance requiring a conditional use permit to operate an "adult cabaret"[4] and he was subsequently convicted. Stevens appealed these convictions to the court of appeals, which concluded the Borough's adult entertainment ordinance presented a "significant possibility" of a First Amendment violation.[5]

---

1. *See* Matanuska–Susitna Borough Code (MSBC) 17.70.020(A)(1), (B) (requiring "uses [of land] requiring a beverage dispensary license under AS 04.11.090 (bar, lounge, and the like)" to obtain conditional use permit).

2. Former MSBC 08.52.015(A), (B) (2004). The Borough Assembly repealed these subsections of MSBC 08.52.015 in 2008. *See* Matanuska–Susitna Borough Ordinance 08–005, § 4 (2008).

3. *Stevens v. Matanuska–Susitna Borough,* 146 P.3d 3, 13 (Alaska App.2006).

4. *See* MSBC 17.90.015.

5. *Stevens v. Matanuska–Susitna Borough,* Nos. A–9674, A–9683, 2007 WL 2143008, at *1 (Alaska App. July 25, 2007).

The court of appeals remanded the case to the district court,[6] and the Borough later dropped its adult entertainment case against Stevens.

In January 2005 the Borough's Director of Planning and Land Use (Director) protested Stevens's continued operation under his liquor license. The Director relied on the ordinance violations in alleging that Stevens's continued operation of Fish Heads was "contrary to the best interests of the public." In February 2005 the ABC Board accepted the Director's protest and denied Stevens's continued operation under his license,[7] but allowed Fish Heads to operate pending the outcome of an adjudicatory hearing under the Administrative Procedure Act (APA).[8] Stevens challenged the protest as both untimely and improperly filed by a Borough employee instead of the Borough itself. An administrative law judge (ALJ) concluded the Borough's protest was timely and properly filed and denied Stevens's motion for summary adjudication.

The ALJ held a two-day hearing in January 2006 to provide Stevens "an opportunity to show that [the Borough's] protest was arbitrary, capricious[,] and unreasonable." The Borough presented its history of problems with Fish Heads, including past ordinance violations. Stevens and his bar manager both testified about efforts to minimize the noise. The ALJ ultimately concluded that: (1) the Borough's protest was properly filed; (2) the Borough was not required to bring its protest before the Borough Assembly or its planning commission before filing it with the ABC Board; and (3) because Fish Heads repeatedly violated local ordinances, the Borough's protest was not arbitrary, ca-

pricious, and unreasonable. The ALJ recommended the ABC Board deny Stevens's continued operation under his liquor license. The ABC Board adopted the ALJ's recommendation.

Stevens appealed the ABC Board's decision to the superior court. In January 2009 the superior court concluded that: (1) the Director properly protested Stevens's license on the Borough's behalf pursuant to a lawful delegation of Borough authority; (2) the ALJ correctly required Stevens to prove the Borough's protest was arbitrary, capricious, and unreasonable; (3) Stevens failed to properly raise before the ABC Board or ALJ whether the Borough had authority to enact the noise ordinance that formed one of the bases for its protest; (4) because Stevens's noise ordinance violations resulted in criminal convictions, the Borough's reliance on those convictions as a basis for its protest was not arbitrary, capricious, and unreasonable; and (5) because Stevens's noise ordinance convictions properly formed a basis for the Borough's protest, the court did not need to reach the issue of Stevens's adult entertainment ordinance violation. Stevens appeals.

## III. STANDARD OF REVIEW

 When a superior court acts as an intermediate court of appeal, we independently review the merits of an underlying administrative decision.[9] "We apply our independent judgment to questions of law that do not involve agency expertise, including constitutional questions." [10] We "apply our independent judgment to statutory interpretation, adopting the rule of law most persuasive in light of precedent, reason, and policy." [11]

---

**6.** *Id.* at *3.

**7.** A local governing body may object to an application for the issuance, renewal, transfer, or continued operation of a liquor license. AS 04.11.480(a). When such a municipal protest is properly filed, "the [ABC Board] shall deny the application or continued operation unless the [ABC Board] finds that the protest is arbitrary, capricious, and unreasonable." *Id.*

**8.** AS 44.62.950 ("This chapter may be cited as the Administrative Procedure Act.").

**9.** *Nelson v. State, Commercial Fisheries Entry Comm'n,* 186 P.3d 582, 585 (Alaska 2008) (citing *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004)).

**10.** *Squires v. Alaska Bd. of Architects, Eng'rs, & Land Surveyors,* 205 P.3d 326, 332 (Alaska 2009) (citing *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1127 (Alaska 1999)).

**11.** *Alaska Nat'l Ins. Co. v. Nw. Cedar Structures, Inc.,* 153 P.3d 336, 338 (Alaska 2007) (citing *In re Life Ins. Co. of Alaska,* 76 P.3d 366, 368 (Alaska 2003)).

## IV. DISCUSSION

### A. The Borough's Protest Authority

■ Stevens argues that both the ABC Board and the superior court erred in upholding a protest filed by the Director, rather than by the Borough itself. Stevens concurs with the general principle that municipalities may broadly delegate their powers, but argues that the Borough did not actually delegate the Borough's protest authority to the Director.

The ALJ examined the liquor licensing protest procedures and stated that "[n]othing ... suggests a restriction on how, within the bounds of law, a 'local governing body' must act to file a protest." The ALJ noted that the Borough properly passed an ordinance delegating its protest authority to the Director, who acted "in accordance with the procedure set out in that ordinance." The ALJ concluded that the Borough was not required to bring a protest of Stevens's liquor license before the Borough Assembly or its planning commission and that the Director followed Borough procedures established by ordinance in protesting Stevens's liquor license.

The superior court briefly reviewed past versions of the Borough Code and noted that "[i]t was clearly the intent of the Borough Assembly to broadly delegate the authority to file protests [to] the planning and land use office." The superior court concluded that the Borough permissibly delegated its protest authority to the Director, who properly protested on the Borough's behalf.

We begin by noting the general principle that municipalities may broadly delegate powers to municipal agencies or officers. Article X, section 1 of the Alaska Constitution provides in relevant part that a "liberal construction shall be given to the powers of local government units." Alaska Statute 29.20.400(a) provides that the "governing body [of a municipality] may establish municipal departments and distribute functions among them." [12] Alaska Statute 29.35.410 reinforces this authority by conferring upon municipalities "all powers and functions necessarily or fairly implied in or incident to the purpose of" the powers contained in Title 29, including the power to establish departments and distribute functions to those departments as provided by AS 29.20.400(a). [13]

Alaska Statute 04.11.480(a) permits municipalities to protest the issuance, renewal, relocation, transfer, or continued operation of liquor licenses within their borders. It follows that absent some reason to believe the legislature limited a municipality's authority under AS 04.11.480, the Borough may delegate its protest power to a department or department head, such as the Director. Stevens offers no such reason, and we find none.

Stevens instead narrowly argues that the Borough Code does not actually empower the Director to protest the *continued operation* of his license. In relevant part, MSBC 08.40.010 provides:

(A) Upon notice from [the ABC Board] of an application within the Borough for the issuance, renewal, or transfer of location [of a liquor license] as defined in AS 04.11.480, the planning and use department shall:

(1) review the application for compliance with MSBC 17.70 to determine that no permit is required, or that the applicant has obtained any permits required and no violations to a permit exist[ ];....

Stevens's argument relies on MSBC 08.40.010's failure to mention procedures for protesting a liquor license's "continued operation." Stevens proposes we interpret MSBC 08.40.010 as excluding protests against continued operation from the Borough's delegation to the Director. We decline to do so.

When the Borough adopted MSBC 08.40.010, the then-current version of AS 04.11.480(a) allowed municipalities to protest the issuance, renewal, or transfer of a liquor license, but it did not allow municipalities to protest a license holder's continued operation. [14] At the time, MSBC 08.40.010 tracked

---

**12.** Alaska Statutes Title 29, Chapter 20 is entitled "Municipal Officers and Employees." *Id.*

**13.** Alaska Statutes Title 29, Chapter 35 is entitled "Municipal Powers and Duties." *Id.*

**14.** Former AS 04.11.480(a) (1994).

former AS 04.11.480(a) in delegating the Borough's protest authority in each licensing posture to the Director. The legislature amended AS 04.11.480(a) in 1995 to enable municipalities to protest a liquor license's continued operation through its second year.[15] The 1995 amendment added that "the procedures for action on a protest of continued operation of a license are the same as the procedures for action on a protest of a renewal application."[16] In light of this legislative history, we read MSBC 08.40.010 as delegating the Director authority to protest the continued operation of a liquor license to the same extent as for a license issuance, renewal, or transfer.

■ We nonetheless note that MSBC 08.40 substantially restricts the Director's discretion in filing a protest. The Director is required to review each license application for compliance with the Borough's conditional use permit requirements.[17] If the applicant meets conditional use permit requirements—either because no permit is necessary or because of compliance with all necessary permits—the Director shall notify the ABC Board that the Borough waives its right to protest the license.[18] If the applicant is in violation of any conditional use permit requirements, the Director shall file a protest with the ABC Board indicating the reasons for protesting the license.[19] The ordinance language is mandatory; the Director must either waive protest or file a protest.[20] Because we read this provision to include protests to a license holder's continued operation, MSBC 08.40 permits the Director to protest a license holder's continued operation only if the licensee is out of compliance with a conditional use permit requirement.[21]

The Director protested Stevens's continued operation under his license on two separate grounds: Stevens's violations of MSBC 08.52, a noise ordinance, and of MSBC 17.90, an adult entertainment ordinance. Like the superior court, we only need to consider the first basis for the Director's protest. The Borough's standards for conditional use permits include whether an establishment negatively affects neighboring properties through "dust, noise, obtrusive advertising[,] and glare."[22] This general proscription embraces disruptive noise levels, the subject matter of MSBC 08.52, and provides the legal foundation for the Director's protest.

■ Even if this conclusion were incorrect, the Borough's participation at every procedural level is sufficient to cure any deficiencies in the Director's authority to file the protest. The Borough's attorneys appeared before the ALJ, the superior court, and this court. At each stage of the proceedings the Borough's attorneys maintained that the Director's actions properly represented the Borough's wishes, that the Borough supported the protest against Stevens, and that Stevens operated Fish Heads contrary to the Borough's interests.

We note several other state courts have concluded that a municipality may cure the absence of a delegation of authority by ratifying an agent's act so long as the municipality held the power to perform the original act. For example, the Supreme Court of Washington recently distinguished between municipal acts *ultra vires*—those made beyond a municipality's statutory authority—and acts within a municipality's power that merely

15. *See* ch. 101, § 20, SLA 1995 (providing for municipal protests against continued operation of liquor licenses).

16. *Id.; see also* AS 04.11.480(a).

17. MSBC 08.40.010(A)(1) requires the Director to "review ... for compliance with MSBC 17.70."

18. MSBC 08.40.020 ("If the ... department determines that the requirements of [MSBC] 08.40.010 are satisfied, the department shall ... notify the [ABC Board] that [the Borough] waives its right to protest the application.").

19. MSBC 08.40.030(A) ("If the ... department determines that any of the requirements ... are not satisfied, the department shall ... notify the [ABC Board] that [the Borough] protests the application. The protest shall state the reasons for the protest.").

20. *See* MSBC 17.125.005(A)(3) (defining "shall" as "mandatory").

21. MSBC 08.40.010(A)(1), .020, .030(A).

22. MSBC 17.70.100(A)(2)(a).

"suffer from some procedural irregularity."[23] Although acts "performed with no legal authority ... cannot be validated by later ratification,"[24] those merely exercised through unauthorized procedural means may be later ratified and thereby adopted by a municipality.[25] Other courts have similarly concluded that when a municipality or agency possesses a power and a subordinate improperly exercises that power, the municipality or agency acting as principal may endorse that action and adopt it as its own through either express or implied ratification.[26]

We conclude that the Borough's extensive and continuing support ratified the Director's protest, curing any possible defect and adopting that protest as if the Borough had filed it directly with the ABC Board. We therefore affirm the superior court's conclusion that the ALJ correctly upheld the validity of the Borough's protest against Stevens.

### B. Due Process And AS 04.11.480's Burden–Shifting Regime

■ Stevens raises two related issues regarding the burden of proof before the ALJ, that: (1) two sections of Title 4 "hopelessly contradict[ ]" one another, rendering it legal error to place the burden of proof on him; and (2) the Alaska Constitution's due process clause prohibits placing the burden of proof on a liquor licensee in protest proceedings. Stevens argues that the ALJ applied an unconstitutional construction of the liquor licensing statutes and that we should vacate the proceedings below, directing the ALJ to place the burden of proof on the Borough as the "entity lodging the protest."

Alaska Statute 04.11.370 provides that "[a] license or permit shall be suspended or re-voked if the [ABC Board] finds" a licensee has committed one of 11 prohibited acts or omissions.[27] Stevens interprets this section as requiring the ABC Board to bear the burden of proving one of 11 enumerated grounds before suspending or revoking his license.

Alaska Statute 04.11.480 provides that a local governing body may object to an application for the issuance, renewal, transfer, or continued operation of a liquor license. When such a municipal protest is properly filed, "the [ABC Board] shall deny the application or continued operation unless the [ABC Board] finds that the protest is arbitrary, capricious, and unreasonable."[28] Stevens argues that section .480 "clearly puts the burden on the license holder ... to somehow prove [a municipality's p]rotest was arbitrary, capricious, and unreasonable."

Neither section, however, provides procedures for ABC Board hearings. Another section of the liquor licensing laws—AS 04.11.510—provides these procedures. Alaska Statute 04.11.510(c) states that as a default, "[B]oard proceedings to suspend or revoke a license shall be conducted in accordance with [the APA]." In turn, the APA provides that "[u]nless a different standard of proof is stated in applicable law, the ... petitioner has the burden of proof by a preponderance of the evidence if an accusation has been filed ... or if the renewal of a right, authority, license, or privilege has been denied."[29] Section .480 is such an "applicable law." As Stevens concedes, AS 04.11.480 shifts the burden of proof to the licensee when a municipality successfully protests the issuance, renewal, transfer, or continued operation of a liquor license.

---

**23.** *S. Tacoma Way, LLC v. State,* 169 Wash.2d 118, 233 P.3d 871, 873 (2010).

**24.** *Id.* at 874.

**25.** *Id.* at 873–74.

**26.** *See, e.g., id.; Cal. Sch. Emp. Ass'n v. Pers. Comm'n,* 3 Cal.3d 139, 89 Cal.Rptr. 620, 474 P.2d 436, 439 (1970) ("Moreover, an agency's subsequent approval or ratification of an act delegated to a subordinate validates the act, which becomes the act of the agency itself."); *Edwards v. Mettler,* 268 Minn. 472, 129 N.W.2d 805, 809 (1964) ("We have frequently held that,

where official action is insufficient, a board or municipal corporation may ratify or adopt that which it could have done to begin with."); *Casamasino v. City of Jersey City,* 158 N.J. 333, 730 A.2d 287, 295 (1999) (noting that "an *intra vires* act ... may be ratified" by a municipality).

**27.** AS 04.11.370(a)(1)-(11).

**28.** AS 04.11.480(a).

**29.** AS 44.62.460(e)-(e)(1).

Sections .370 and .480 do not contradict one another—they apply in different circumstances. Section .370 is a penal provision under which the regulatory agency is the petitioner subject to the burden of proof. Section .480 provides a mechanism for public influence over liquor licenses; after a municipal protest under AS 04.11.480 the licensee, seeking to overcome the cessation of its operations under its license, bears the burden of proof.

 Stevens alternatively argues that the Alaska Constitution's due process clause [30] forbids shifting the burden of proof to a licensee in the face of a municipal protest. We construe this as an argument that the Alaska Constitution forbids placing the burden of persuasion—the burden of establishing a fact by a given degree of proof—on a liquor license holder to retain that license in light of a municipal protest.[31] Stevens claims such a placement is inconsistent with constitutional due process requirements. We disagree.

Stevens correctly notes we have held that a liquor license is a valuable property right for which a holder is entitled to due process before suspension or revocation.[32] We have explained that before the property interest in a liquor license can be taken, "due process requires that [a license holder] be provided with notice and an opportunity to be heard in a meaningful, impartial hearing."[33] These

procedures "need not be elaborate," however, and due process "merely require[s] the [ABC] Board to hold a hearing before it [can] suspend a liquor license."[34] Nothing about requiring Stevens, rather than the Borough, to carry the burden of persuasion would deprive Stevens of notice, an opportunity to be heard, or the impartiality or significance of his hearing. We have implicitly acknowledged the procedural propriety of such burden-shifting in another context,[35] and although we do not preclude the possibility that due process could prevent the legislature from shifting either the burden of production or persuasion in other contexts, we hold that it does not do so under AS 04.11.480.[36]

We finally note that although the ALJ correctly articulated the burden of proof and its placement on Stevens, the record before us suggests that Stevens may not in fact have been held to that burden. The ALJ described the Borough as the "first party" and took the Borough's opening statement first. The Borough maintained in its opening statement that it had a "valid basis that [was] not arbitrary, capricious[,] and unreasonable for protesting" Stevens's license. The Borough then called witnesses demonstrating Stevens's operation of Fish Heads created excessive noise, took testimony from the Director explaining why the Borough filed the

---

**30.** Alaska Const. art. I, § 7.

**31.** *See State v. 45,621 Square Feet of Land,* 475 P.2d 553, 555–56 (Alaska 1970) (explaining "burden of production" and "burden of persuasion" facets of "burden of proof"). This burden is separate and distinct from the burden of production—the burden of establishing a prima facie case to avoid summary judgment or a directed verdict on an issue—which the Borough successfully bore. *See Kinzel v. Discovery Drilling, Inc.,* 93 P.3d 427, 433 (Alaska 2004) (describing how proponent bearing burden of production must establish prima facie case of given fact).

**32.** *Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.,* 991 P.2d 202, 211 (Alaska 1999).

**33.** *Id.* (citing *Thorne v. State, Dep't of Pub. Safety,* 774 P.2d 1326, 1329 (Alaska 1989)).

**34.** *Id.*

**35.** *See, e.g., Ehredt v. DeHavilland Aircraft Co. of Canada,* 705 P.2d 913, 916, 916 n. 5 (Alaska 1985) (noting employer who failed to provide coverage as required by workers' compensation laws bore burden of proving non-negligence in subsequent civil action).

**36.** Stevens's reliance on two of our previous decisions is misplaced. *Alcoholic Beverage Control Bd. v. Malcolm, Inc.* examined a liquor license revoked for violation of a statute analogous to current AS 04.11.370(a); as Stevens acknowledges, subsection .370(a) places the burden on the ABC Board to demonstrate the act or omission alleged. 391 P.2d 441, 444 (Alaska 1964). *Alcoholic Beverage Control Bd. v. Decker* involved the ABC Board's license denial as against the public interest as required by statute, not a protest by a municipality or citizens. 700 P.2d 483, 485 (Alaska 1985). Neither case addressed the due process requirements for the burden of proof or analyzed liquor license protest procedures under section .480.

protest, and introduced evidence of Stevens's Borough Code violations. Despite the ALJ's statements to the contrary, the record before us suggests that the Borough, rather than Stevens, took on and successfully carried the burden of persuasion. In that light, Stevens fails to show that he was prejudiced by the statutory burden-shifting regime.[37]

We therefore conclude that Stevens's due process rights were not violated at the hearing before the ALJ.

## C. Stevens's Collateral Challenge On His Citation Convictions

█ Stevens raises several arguments challenging the validity of the ordinance on which his citation convictions were based. Stevens reasons that to the extent the Borough's protest was based in whole or great part on these citations, the protest also is invalid. Stevens maintains, in relevant part, that: (1) he is not estopped from challenging the noise ordinance's validity by virtue of his arguments before the court of appeals; and (2) due to the Borough's failure to follow required procedures to pass the noise ordinance, it is invalid.

As the superior court noted, Stevens failed to brief these arguments before either the ABC Board or ALJ, and, except in passing, failed to mention them during oral argument before the ALJ. Stevens instead merely referenced his then-ongoing citation conviction challenges before the court of appeals—which ultimately affirmed Stevens's convictions.

To the extent Stevens might have been permitted to collaterally challenge the citation convictions, he was required to brief adequately his challenge as an initial matter before the ALJ.[38] Failure to do so precludes

Stevens's attempt to collaterally challenge his citation convictions here, especially in light of both his knowledge as a liquor licensee that violations of local law could result in the revocation of his liquor license and his repeated encounters with the Borough preceding and following his initial citation. Although Stevens unsuccessfully challenged the noise ordinance on direct appeal by failing to preserve the issue,[39] he also could have filed a declaratory action against the ordinance's validity or attacked the ordinance's validity before the ALJ as an initial matter in this case. Stevens's failure to do so does not create a new avenue before this court by which he may challenge his convictions.

On this record, Stevens's citation convictions themselves are sufficient to overcome a challenge that the Borough behaved in an arbitrary, capricious, and unreasonable manner in protesting Stevens's continued operation under his liquor license. We therefore affirm the superior court's conclusion that the ALJ correctly found the Borough's protest was not arbitrary, capricious, and unreasonable.

## V. CONCLUSION

We AFFIRM the decision of the superior court upholding the ABC Board's decision.

CARPENETI, Chief Justice, not participating.

---

**37.** Alaska R. Civ. P. 61 (directing court to "disregard any error or defect ... which does not affect the substantial rights of the parties"); *see also Dobos v. Ingersoll,* 9 P.3d 1020, 1024 (Alaska 2000) (holding appellant bears burden of demonstrating prejudice from error).

**38.** *Palmer v. Municipality of Anchorage, Police & Fire Ret. Bd.,* 65 P.3d 832, 839 n. 16 (Alaska

2003) ("We do not generally reach the merits of arguments not presented to the agency whose decision is appealed.") (citing *Amerada Hess Pipeline Corp. v. Alaska Pub. Utils. Comm'n,* 711 P.2d 1170, 1181 n. 22 (Alaska 1986)).

**39.** *Stevens,* 146 P.3d at 8–9, 13.